## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **DIANE BARTON, on behalf of herself and others similarly situated,** | ) ) ) ) | **CIVIL ACTION NO.  4:20-cv-40114-TSH** |
| **Plaintiffs,** | ) ) |  |
| **v.** | ) ) |  |
| **TEMESCAL WELLNESS, LLC** | ) ) |  |
| **Defendant.** | ) ) |  |

### ORDER ON DEFENDANT'S MOTION TO DISMISS (Docket No. 11)

### MARCH 8, 2021

**HILLMAN, D.J.,**

 Before the Court is Temescal Wellness, LLC's ("Defendant") Motion to Dismiss the class-action suit brought by Diane Barton on behalf of herself and a putative class of consumers ("Plaintiffs") who received unsolicited text messages on their cellular phones in violation of the Telephone Consumer Protection Act ("TCPA").  For the reasons set forth below, Defendant's Motion is ***DENIED***.

### Factual Background

On December 20, 2019 and January 23, 2020, Barton received two text messages on her cellular phone from a ten-digit phone number with the following message:

> "Temescal Wellness: EX-
> TENDED HOURS ALL LOCA-
> TIONS! Today & tomorrow all
> locations open early @ 9am
> and staying open til 8pm.
> Menu: http://bit.ly/2LIb0Jp"

(FAC ¶ 25, Docket No. 9.).

The website address embedded in the text messages was a Bitly link.  ¶ 28.  Bitly is an Internet service which condenses long and cumbersome website addresses into shorter links.  ¶ 28-29.  To create a Bitly link, a user must visit Bitly's website, input the original web address to obtain the Bitly link, and then copy and paste the Bitly Link into an application.  ¶¶ 29-31. Barton alleges that telemarketers often use Bitly for automated text messages because they are charged by the character when they send text messages *en masse*.  ¶ 30.

When Barton received the texts, her mobile phone number had been listed for at least 31 days on the National Do Not Call Registry.  ¶ 36.  The texts were not precipitated by an emergency, and Barton had not provided Defendant with prior express written consent to contact her using her cellular phone number.  ¶¶ 37-38.

**<u>Procedural History</u>**

Barton filed this suit under the TCPA purporting to represent two classes of consumers whom Defendant illegally texted over the four years preceding the filing of the complaint, either because the texts were robotexts within the meaning of 47 U.S.C. § 227 *et seq*. ("Count I"), or because they received 2 or more such texts within a 12-month period even though they had listed their phone numbers on the National Do Not Call Registry ("Count II").

**Legal Standard**

A defendant may move to dismiss, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "plausible entitlement to relief." *Bell Atl. v. Twombly*, 550 U.S. 544, 559 (2007).  In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000).

"Applying the plausibility standard is a 'context-specific task that requires the reviewing court to draw upon its judicial experience and common sense." *Decotiis v. Whittemore*, 635 F.3d 22, 28 (1st Cir. 2011) (citing *Roman-Cancel v. United States*, 613 F.3d 37, 41 (1st Cir. 2010).  First, the court must "distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013).  Next, the court must "determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable." *Id*. at 103.


**Discussion**

I. Robotexts (Count I)

*A.  Text Messages are Calls within the Meaning of the TCPA.*

The TCPA makes it unlawful "for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express of the called party) . . . using any automatic telephone dialing system . . .  to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227 (b)(1)(A)(iii).

The overwhelming weight of precedent holds that text messages are calls for the purposes of the TCPA.

The TCPA was enacted in 1991, shortly before the advent of text messaging.  It applies to "calls" made with an Automatic Telephone Dialing System ("ATDS") or an artificial prerecorded voice.  47 U.S.C. § 227(1)(A); 1(B).  FCC regulations clarified that for the purposes of the TCPA, a call may be a voice or text message. 18 F.C.C.R. 14014, 14115 (2003).  Federal courts up to and including the Supreme Court have endorsed the FCC's regulation that the TCPA applies to text messages.

The Supreme Court ratified the FCC's interpretation that a text message was a call for the purposes of the TCPA in *Campbell-Ewald v. Gomez*.  577 U.S. 153 (2016).  In that case, a contractor for the U.S. Navy sent recruitment text messages to the Plaintiff and class members' cell phones without their prior express consent.  *Id.* at 157.  The Court granted certiorari to decide whether the defendant's unaccepted offer of judgment can moot the plaintiff's claim, thereby depriving federal courts of Article III jurisdiction, and to resolve whether federal contractors enjoy TCPA immunity.  *Id*. at 160.  Writing for the majority, Justice Ginsburg stated plainly that "[a] text message to a cellular telephone, it is undisputed, qualifies as a "call" within the compass of § 227(b)(1)(A)(iii)." § (227)(b)(1)(A)(iii) forbids making telemarketing calls with an ATDS or artificial or prerecorded voice to cellular phone numbers without the subscriber's permission.

The Defendant argues that Justice Ginsberg's statement should not be read to imply that the TCPA applies to texts.  Instead, it should be read to mean that because Gomez and Campbell-Ewald agreed that the TCPA applied to texts, Justice Ginsburg adopted their assumption without giving it the Court's imprimatur in order to reach the mootness issue.

It is true that the Supreme Court may reserve or decline to decide questions of law outside the scope of the distinct issues that they have decided to hear in a given case. However, nothing in Justice Ginsburg's analysis implies any hesitation or reservation over Campbell and Ewald's stipulation that text messages are calls for the purposes of the TCPA.  Because the entire case was premised on text messaging, it is unlikely that the Court would stay silent about any serious concerns that robotexts were an invalid ground for TCPA recovery in a case construing the same statute.  Furthermore, in the most recent term Justice Kavanaugh's plurality opinion in *Barr* cited the FCC's regulations applying the TCPA to text messages as the current applicable legal standard.  *Barr v. American Ass'n of Political Consultants, Inc*., 140 S.Ct. 2335, 2344 n.1 (2020).

The First, Second, Seventh, Ninth, and Eleventh Circuits have either adopted Judge Ginsburg's remark as black letter law rather than *dicta* or had already held that the TCPA included text messages before *Campbell-Ewald*.  *See Breda v. Cellco Partnership*, 934 F.3d 1, n.1 (1st Cir. 2019) ("The TCPA also applies to other forms of communications, such as text messages.  See *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016)."); *Douglas v. W. Union Co.*, 955 F.3d 662, 663 (7th Cir. 2020); *Melito v. Experian Mktg. Solutions, Inc.*, 923 F. 3d 85, 93 (2d Cir. 2019); *Satterfield v. Simon & Shuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015).  Accordingly, multiple district courts within the First Circuit have allowed TCPA actions based on text messages to move forward.  *See, e.g. Mantha v. Quotewizard*, 2020 WL 4369701 at *2 (D. Mass. Jul. 30, 2020) ("As the Court stated previously when dismissing the ATDS claim in the initial complaint, Plaintiff must plausibly allege that defendant (1) used an ATDS (2) to call (or text) a cellular telephone number."); *McDermet v. Trinity Heating and Air, Inc*., 2018 WL 84073 (D.

Mass. Feb. 12, 2018) (not reported) (citing Ninth Circuit case law finding that "The FCC has reasonably interpreted call' under the TCPA to encompass both voice calls and text calls."); *Clough v. Revenue Frontier, LLC*, 2019 WL 2527300 at *3 (D.N.H. Jun. 19, 2019) (citing Eleventh Circuit caselaw) (not reported); *DeCapua v. Metropolitan Property and Cas. Insur. Co.*, 2020 WL 1303248 fn. 1 (D.R.I. Sep. 30, 2019) (not reported). *Mantha* is cited throughout the Defendant's brief. In fact, Plaintiff has not pointed to a single court which has held that text messages are not calls for the purposes of TCPA to bolster his argument. (Dft's Br. at 6-8, Document No. 11-1).

*B.  Plaintiffs Adequately Pled that Defendants used an ATDS.*

To state a claim for Count I (Robotexting), Barton must plausibly allege that Defendant used an ATDS to text her cell phone. *See Breda v. Cellco Partnership*, 934 F.3d 1,4 (1st Cir. 2019).

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  The federal courts are currently embroiled in a longstanding dispute about "whether a device must itself be able to generate random or sequential numbers to qualify as an ATDS." *See generally Gonzalez v. HOSOPO Corp.*, 371 F. Supp. 3d 26, 29–30 (D. Mass. 2019).  While the First Circuit has not weighed in, I adopt the Ninth Circuit's formulation endorsed by my colleague Chief Judge Saylor, under which "to qualify as an ATDS under the TCPA, a device need only have the capacity to do one of the following: either (1) "store . . . telephone numbers to be called" and "dial such numbers," or (2) "produce telephone numbers to be called, using a random or sequential number generator" and "dial such numbers." *Id*. at 34.

When determining whether a plaintiff has adequately pled the use of an ATDS, courts must balance how difficult it may be for unsophisticated consumers to allege facts about the technical specifications of a calling company's dialing system without the benefit of discovery with R. 12(b)(6)'s requirement that a plaintiff provide enough non-conclusory facts "to raise a right to relief above the speculative level." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011). To walk this fine line, several judges within the U.S. District Court for the District of Massachusetts have allowed plaintiffs to "rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an ATDS was used." *See Jones v. FMA All. Ltd.*, 978 F. Supp.2d 84, 84 (D. Mass. 2013). Other courts also consider the number or frequency of messages, the ability to respond or interact with the messages, and whether a SMS short code or long code was used to send the message. *Schley v. One Planet Ops Inc.*, 445 F.Supp.3d 454, 460-61 (N.D. Cal. 2020) (discussing factors used to determine whether the content and nature of a text message creates a plausible use of an ATDS).

Whether Barton has adequately pled use of an ATDS is a very close question. Three recent TCPA cases from the District of Massachusetts are particularly instructive.

In *Rosenberg*, a plaintiff "pled just enough facts" to state use of an ATDS where "at least one offending call was made from a non-working telephone number and that the call was made to appear as though it came from a local Massachusetts area code" (this technique is called spoofing) and "other people have complained about receiving similar messages from the same non-working telephone number." *Rosenberg v. LoanDepot.com LLC*, 435 F.Supp.3d 308, 323-24 (D. Mass. 2020). In *Mantha*, however, the court granted a motion to dismiss for failure to sufficiently allege use of an ATDS where the plaintiff stated that the two text messages at issue

were sent from a long code number[1] registered to a company which provides mass text messaging services, contained commercial content, and used the recipient's first name. *Mantha v. Quotewizard*, LLC, 2020 WL 1274178 (D. Mass. Mar. 16, 2020) ("Hey, it's Amanda following up.  When's a good day for us to talk Joe? You requested a quote on auto insurance. Message me if you're still interested!").  In *Scanlon v. Manscraped, LLC*, a plaintiff adequately pled use of an ATDS for robotexts where the texts were repetitive, commercial in nature, were not personalized, and contained a generic response option allowing the recipient to "Reply STOP to opt out."  Case No. 20-cv-10795,  Document No. 26 at 7 (D. Mass. Dec. 14, 2020) (Report & Recommendation subsequently adopted by the district court).

Barton alleged four facts to show plausible use of an ATDS.  The first—that the texts were sent using an automated dialing system—must be set aside as conclusory.  Second, unlike in *Rosenberg*, the texts Barton received were generic because they were not personalized, which can indicate an ATDS.  Third, Barton alleged that messages with Bitly links indicate use of an ATDS because companies who send mass messages are charged by the number of characters in each message, and using Bitly to shorten long website links cuts costs.  Barton adds that it would be "inefficient and unlikely" for a human sender to go the trouble of creating a Bitly link. Fourth, the texts were commercial in nature.

None of the other factors listed in *Jones* or *Schley* support the use of an ATDS here: the sender used a long-code rather than a short-code; the frequency of the messages, which arrived weeks apart, does not indicate an ATDS; Plaintiff has not alleged that she knows of any other

---

[1] "A short-code is a six-digit number that allows high-volume, application driver messaging . . . Long-codes are meant for person-to-person communications and can send only 1 message per record; short-codes can send 100 messages per second."  *Legg v. Voice Media Grp, Inc*., 990 F. Supp. 2d 1351, 1354 (S.D. Fla. 2014).

consumers who received the same text message at the same time; there was no spoofing or allegation the text came from a non-working number; and the text did not contain a reply feature which generates automatic responses.

The only factors separating *Mantha* and Barton are that Barton's texts were not personally addressed to her and they included Bitly links. Plaintiff's Bitly argument is novel; while I can find at least 19 TCPA cases involving text messages containing Bitly links, none of the plaintiffs argued that the use of Bitly's link-condensing technology indicated use of an ATDS. *See, e.g., Collins v. Travel*, 2017 WL 85446 (E.D. Ill. Jan. 10, 2017); *Thomas v. Abercrombie & Fitch Stores, Inc.*, 2017 WL 5289546 (S.D. Mich. 2017); *Reese v. Marketron Broadcast Solutions, Inc.*, 2018 WL 2117241 (E.D. La. May 8, 2018); *Jackson v. Euphoria Wellness*, LLC, 2020 WL 5366419 (N.D. Cal. Sep. 8, 2020); *Armstrong v. Investor's Business Daily, Inc*, 2019 WL 2895621 (C.D. Cal. Mar. 12, 2019); *Pederson v. Donald J. Trump for President, Inc*., 465 F.Supp.3d 929 (D. Minn. Jun. 8, 2020).

Considered together, the anonymous nature of the texts and the use of the Bitly link just barely "nudge" the Plaintiff's ATDS allegations "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 547 (2007). Sending texts without the recipient's name does suggest the texts were sent to a large group of potential targets by technological rather than human hands. Moreover, accepting the Plaintiff's factual allegations that companies which send large numbers of texts often use Bitly to cut costs further supports that conclusion. Without an opportunity to obtain discovery into Defendant's records and technologies, Plaintiffs have done just enough to plead use of an ATDS under Rule 12(b)(6)'s minimal plausibility standard.

Because Barton stated a plausible claim for relief under the TCPA's robocalling provisions, the Defendant's Motion to Dismiss Count I fails.

II. Do Not Call Registry (Count II)

The TCPA also prohibits "telephone solicitations" to any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . .: 47 C.F.R. § 64.12009(c)(2). Defendant argues that Barton is not a residential subscriber and that the texts she received do not qualify as solicitations. Plaintiff alleges – and so the Court must accept for the purposes of a Rule 12(b)(6) motion—that her mobile phone number was listed on the do-not-call registry.

A. *Barton Adequately Pled that She Uses her Cell Phone as a Residential Line.*

Under the TCPA, only residential phone subscribers are entitled to Do Not Call protections, but Barton did not explicitly allege that she uses her cell phone as a residential line. Barton argues that I should assume her cell phone is used as a residential line because she registered it on the Do Not Call Registry, and the agency authorized to "prescribe regulations to implement the requirements" of the TCPA, the Federal Communication Commission ("FCC"), presumes that wireless subscribers who ask to be put on the National Do Not Call Registry are residential subscribers. 47 U.S.C. § 227(B)(2); *see* IMPLEMENTING THE TCPA ACT OF 1991, 188 F.C.C.R. 14014, 14039 (2003). The FCC added that a cell phone subscriber might have to provide "further proof" if the FCC were to take enforcement action. *Id.* At least two district courts within the First Circuit have cited the FCC's regulations as establishing a more lenient pleading standard for residential subscriber at the motion to dismiss stage. *See Rosenberg v. LoanDepot.com LLC*, 435 F.Supp.3d 308, 324 (D. Mass. 2020) (denying motion to dismiss TCPA robotexting case where plaintiff pled that he put his cellular phone number on the Do Not Call Registry); *Laccinole v. Appris*, 453 F.Supp.3d 499, 505-06 (D.R.I. 2020).

Defendant notes that in *Stevens-Bratton v. TruGreen* a TCPA plaintiff lost at summary judgment because her affidavit that she used her cell phone as her residential line did not create a triable issue of fact that she could satisfy the residential telephone subscriber element.  437 F.Supp.3d 648, 656-57 (W.D. Ten. 2020).  However, we are not at the summary judgment stage and Defendants have adduced no evidence that Plaintiff does not use her cell phone as her residential line.  Because Barton has pled that her cell phone number is registered on the Do Not Call Registry and the Do Not Call Registry is only open to residential subscribers and keeping in mind that at the motion to dismiss stage all reasonable inferences are to be made in her favor, I find that Barton has sufficiently pled that she is a residential subscriber for the purposes of her mobile phone number to survive the Rule 12(b)(6) motion.

B.  *The Texts Barton Received Qualify as Solicitations.*

A TCPA solicitation is any call or message made "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services" unless the recipient has given prior express consent, has an established business relationship with the sender, or was a tax-exempt nonprofit organization.  47 U.S.C. § 227(a)(5).  Plaintiff's next attack is that the text messages which Plaintiff received do not constitute solicitations.

I disagree. The texts provided the business' name and sought to alert Plaintiff that it was offering "EXTENDED HOURS" at "ALL LOCATIONS" with the obvious design of prompting her to visit.  We know that the sender hoped she would shop during her visit because the texts included a link to an online menu of items that would be available at those locations and provided no other pretext for why she should come.  It is common knowledge that the term menu indicates goods or serves are available for a price, and that a business sends a potential customer

a menu in the hope of a sale — the texts' inclusion of a busines name and announcement of hours of operation underline that reasoning.

Defendant's only supporting citation is not on point. In *Suttles v. Facebook*, the court found that text messages encouraging recipients to log on to Facebook.com and nothing more were not solicitations because they were not encouraging or directing the recipients to invest o buy any Facebook products.  461 F.Supp.3d 479, 481-83 (W.D. Tex. 2020).  Plaintiff's theory of the case—that Facebook wanted him to visit its website to drive up its usership numbers so it could sell more advertising space—meant that Facebook was indirectly using him to solicit purchases from third parties. Here, Barton was directly solicited: the messages encouraged her to visit its locations where a menu of goods would be available for sale for Barton to purchase.

Because the text messages constitute solicitations and Plaintiff adequately pled that she is a residential subscriber for purposes of the Do Not Call Registry, Plaintiff's Motion to Dismiss Count II fails.

## Conclusion

For the reasons set forth below, Defendant's Motion to Dismiss the First Amended Complaint (Docket No. 11) is ***denied***.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**